HUNT v. SOUTHERN RY. CO.

(District Court, W. D. South Carolina. April 15, 1916.)

1. RAILROADS ⬥337(3)—CROSSING ACCIDENTS—PROXIMATE CAUSE.

A highway was carried over defendant's tracks by an overhead bridge 20 to 30 feet wide, the approach of which was about 200 feet long. Barriers had been erected on each side of the approach next to the bridge between 60 and 80 feet long. Plaintiff's intestate, driving along the highway, had nearly reached the end of the bridge, when his horse became frightened by a passing switch engine and began backing. The horse backed across the bridge, down the approach beyond the barriers, and finally backed the buggy over the embankment, intestate meeting his death in the resulting accident. *Held,* that the proximate cause of the injury was the frightening of deceased's horse, and not any defect in

construction of the approach to the bridge, the horse being frightened by the necessary noise and smoke of defendant's engine.

[Ed. Note.—For other cases, see Railroads, Cent. Dig. § 1092; Dec. Dig. ☞337(3).]

2. RAILROADS ☞305(2)—CROSSING ACCIDENTS—PROXIMATE CAUSE.

In such case the railroad company is not liable for the frightening of the horse; the animal being frightened by the ordinary smoke and steam resulting from the operation of the engine.

[Ed. Note.—For other cases, see Railroads, Cent. Dig. §§ 969, 970; Dec. Dig. ☞305(2).]

3. RAILROADS ☞337(2)—CROSSING ACCIDENTS—PROXIMATE CAUSE.

In such case, though the railroad company was negligent in not placing barriers on the approach, the fact that the horse backed down the approach for a long distance beyond the barriers which had been erected constituted an intervening cause, freeing the railroad company from liability, as when the horse first took fright intestate was in a place protected by barriers.

[Ed. Note.—For other cases, see Railroads, Cent. Dig. § 1091; Dec. Dig. ☞337(2).]

At Law. Action by W. E. Hunt, as administrator of the estate of J. H. Hunt, deceased, against the Southern Railway Company. Motion for nonsuit granted, and complaint dismissed.

Ansel & Harris, of Greenville, S. C., for plaintiff.
Cothran, Dean & Cothran, of Greenville, S. C., for defendant.

JOHNSON, District Judge. This is an action for $10,000 damages on account of the alleged wrongful death of the intestate, John H. Hunt, caused, as alleged, by the negligence of the defendant. The circumstances of the injury, sustained on May 1, 1914, and alleged to have resulted in the intestate's death on May 23, 1915, a year later, were these: The deceased was driving a horse and buggy on a public highway leading into the city of Greenville. He was on that part of the highway constituting the approach to an overhead bridge over the defendant's railroad. The approach was some 200 feet in length, and from 30 to 40 feet wide. At the end of the bridge it was perhaps 15 feet high, and ran out to grade at the other end of the approach. Barriers had been erected on each side of the approach next to the bridge, variously estimated at from 60 to 80 feet long. The deceased was accompanied by a Mrs. Hunt, the wife of his grandson. She was the only eyewitness to the occurrence, and testified that as the horse got within 10 or 15 feet of the end of the bridge, it became frightened at a switch engine passing under the bridge, making much noise and emitting smoke. The horse began backing, cut the buggy to the left, turned completely around, facing in the opposite direction, and backed the buggy over the embankment at a point where there were no barriers, causing the injury complained of.

It appeared that the bridge had been constructed by the defendant about the year 1897, under an arrangement with the city of Greenville, for the purpose of eliminating a grade crossing which had been

in existence for many years near that point. The contract between the railroad company and the city of Greenville was introduced in evidence by the plaintiff, together with a plat of the surroundings and a resolution of the county commissioners, authorizing the closing of the street at the old crossing. The location was beyond the city limits, but as the city was anxious for the railroad company to locate its terminal and shops at the station in the city and to extend its yard to the location in question, the city agreed to secure the necessary rights of way for the diversion of the street or road, which was done. The railroad company obligated itself to construct and maintain the bridge, and the testimony was to the effect that the county authorities constructed the approaches on each side; there was no testimony as to who constructed the barriers.

At the close of the plaintiff's testimony the defendant moved for a nonsuit upon various grounds stated in writing which is filed with the record. I shall pass upon one only of these grounds, and base my rulings solely upon it, and that is that there is no testimony to show that the alleged negligence of the defendant in failing to erect barriers on the approaches was the proximate cause of the injury.

There are two acts of negligence charged against the defendant: (1) The operation of its engines under the bridge, "blowing the whistle, exhausting steam, and making noises" calculated to, and which did, frighten the horse; (2) the failure to erect barriers on both sides of the approach so as to prevent frightened animals from backing off the embankment.

[1] It appears to me clearly from the testimony of Mrs. Hunt that the horse was frightened at the smoke of a switch engine which was being operated under or near the bridge; and, assuming without deciding that under the allegations of the complaint, which makes no reference to smoke thus caused, the plaintiff can rely upon that as an act of negligence, I am clearly of the opinion that under the South Carolina decisions, the emission of smoke under the circumstances being the cause of the fright of the horse and itself not being an act of negligence, the fright of the horse, and not the defect in the construction of the approach to the bridge (the absence of barriers), was the proximate cause of the injury.

[2] It is the settled law of South Carolina, as shown by the cases of Acker v. Anderson County, 20 S. C. 495; Brown v. Laurens County, 38 S. C. 282, 17 S. E. 21; Mason v. Spartanburg County, 40 S. C. 390, 19 S. E. 15, 42 Am. St. Rep. 887; Dunn v. Barnwell, 43 S. C. 398, 21 S. E. 315, 49 Am. St. Rep. 843; Blakely v. Laurens County, 55 S. C. 422, 33 S. E. 503; Settlemeyer v. R. Co., 91 S. C. 147, 74 S. E. 137, reinforced by numerous decisions from Massachusetts, Maine, Pennsylvania, Michigan, Wisconsin, West Virginia, and other states cited in a note at 2 Ann. Cas. 178, that under these circumstances the fright of the horse could not be deemed the proximate cause, or a proximate cause, unless the fright had itself been the result of a negligent defect in the bridge or a negligent operation of the engines of the defendant. There is no contention on the part of the plaintiff that the fright of horse was occasioned by any defect in

the construction or maintenance of the bridge. As to the operation of its engines: The bridge spans the railroad yard, where there are many tracks, and where, as alleged in the complaint, freight and passenger trains and switch engines at all times of the day pass back and forth. It is impossible to operate trains at such a place without the noise complained of, and it is well settled that:

"A railroad company is not liable for injuries resulting from horses becoming frightened upon a highway at the mere sight of its trains or the noises incident to the running of trains and the operation of the road." 3 Elliott on Railroads, § 1264.

There was nothing in the testimony to show that the noises complained of, and, I may add, the smoke, were other than those incident to the orderly operation of the defendant's trains. The construction of the bridge was a great public service, eliminating a grade crossing with the inconveniences and danger incident thereto, particularly over a part of the railroad yard, and should be upheld rather than burdened with obligations which do not exist with reference even to a grade crossing. I conclude, therefore, that the fright of the horse is attributable to the legitimate operation of the defendant's engines, which, of course, could not be its negligence, and that consequently such fright, and not the failure to erect barriers as complained of, was the proximate cause of the intestate's injuries.

[3] Even if it should be held that it was the duty of the defendant, under the circumstances, to erect barriers along the embankment —a point which I do not decide—it is significant that from the testimony of Mrs. Hunt the horse began backing at a point 10 or 15 feet from the end of the bridge, backed the entire length of the barriers, 60 or 70 feet, and to a point 12 or 15 feet beyond the end of the barriers. If this be true, the intestate had passed the point of danger safely, and only reached it by the subsequent uncontrollable action of the frightened horse, evidently an intervening independent cause.

It is therefore ordered, that the motion for a nonsuit be, and the same is hereby, granted, and that the complaint be dismissed, with costs.